UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

UNITED STATES OF AMERICA


                        -v-                          1:22-cr-00487-NRM
                                                     MEMORANDUM &
                                                     ORDER

QUADRI GARNES,
                        Defendant.

------------------------------------------------------------------x

NINA R. MORRISON, District Judge:

On November 25, 2022, Defendant Quadri Garnes was indicted on one count of threatening to assault and murder employees of the United States Postal Service ("USPS")—his former employer—in violation of 18 U.S.C. § 115 (a)(1)(B). Indictment, ECF No. 18 at 1. The Complaint, dated October 6, 2022, alleged that Defendant made statements on a recorded phone call with employees of the New York State Department of Labor ("DOL") on the morning of September 29, 2022, that "threatene[ed] to assault and cause serious bodily injury to one or more United States officials by use of a dangerous weapon, with intent to impede, intimidate, and interfere with such officials while engaged in the performance of their official duties, and with intent to retaliate against such officials on account of the performance of their official duties." Complaint, ECF No. 1 at 1.

Following his arrest and arraignment on the complaint on October 13, 2022, Defendant was ordered detained pending trial. *See* Order of Detention, ECF No. 10. His counsel subsequently submitted a new bail package for this Court's review and

approval, and with the Government's consent, Defendant was released on bond following a hearing before this Court on November 29, 2022.

On June 16, 2023, a superseding indictment was returned, charging Defendant additionally with "transmit[ting] in interstate commerce one or more communications containing one or more threats to injure the person of another, to wit: communications threatening employees of the New York State Department of Labor" pursuant to 18 U.S.C. § 875(c).  Superseding Indictment, ECF No. 23 ¶ 2. The additional charge in the superseding indictment arises from the same course of conduct as the charge set forth in the original Complaint—*i.e.,* the recorded phone call that Defendant made to the New York State Department of Labor on September 29, 2022.  *See id.* ¶¶ 1–2.  Defendant does not dispute that he made the phone call in question (indeed, he identified himself by his name, date of birth, and Social Security Number at the outset of the call, *see* Defendant's Motion *in Limine*, Ex. A, ECF No. 27-1 at 1), but asserts that he is not guilty of the crimes charged herein by the Government.

The parties each filed motions *in limine* on June 23, 2023 in anticipation of trial.  *See* Defendant's Motion *in Limine* ("Def.'s MIL"), ECF No. 27; Government's Motions *in Limine*, ("Gov.'s MIL"), ECF No. 26.  Pursuant to a briefing schedule jointly requested by the parties and adopted by the Court, the motions were fully submitted on July 5, 2023.  The Court heard additional oral argument with respect to certain motions during the final pretrial conference conducted by telephone on July 7, 2023.  *See* Minute Entry, 7/7/2023.

At the Government's request—in order to provide the Government counsel with sufficient time to redact the recording in question from their audio and other exhibits prior to trial, if needed—the Court issued a brief text order shortly following the final pretrial conference regarding its decision on Defendant's motion to exclude certain statements he made in the phone call at issue that referenced his prior criminal convictions and incarceration.  *See* Electronic Order dated 7/7/2023.

Prior to commencing jury selection on July 10, 2023, the Court ruled from the bench on the remaining motions *in limine* filed by both parties; denied, after due consideration, a motion to reconsider its grant of Defendant's motion to exclude that the Government filed by letter brief dated July 9, 2023; and set forth for the record its reasoning as to the disposition of that motion, as well as the other outstanding motions by both parties.

Jury selection commenced on July 10, 2023 and concluded on July 11, 2023 with the selection of twelve jurors and four alternates.  *See* Minute Entries, 7/10/2023 and 7/11/20223.  The jury was not sworn.  Opening statements are now scheduled to begin, once the jury is empaneled, on July 17, 2023.   This Memorandum and Order follows.

## BACKGROUND

The Court assumes the parties' familiarity with the relevant facts.  In brief, the Government alleges that Defendant—a former USPS employee who was, at the time of these events, unemployed and seeking to collect benefits accrued during his USPS tenure—violated 18 U.S.C. §§ 115(a)(1)(B) and 875(c) by making certain

3

threats in a recorded telephone call with the DOL on September 29, 2022, whom he called regarding his pending request for benefits.  Specifically, the Government alleges, *inter alia*, that the following statements that Defendant made during his phone call with the DOL violated §§ 115(a)(1)(B) and 875(c):

- "If I go back to the post office, I'm gonna shoot somebody."

- "[Y]'all gonna make me go to jail for killing somebody.  Or prison."

- "And I'm just like curious as to how to do it before I make a, a hasty reaction on getting my money."

- "Do the city want me to kill five or six different people?  And I'm putting it out there on, cause I know this is recorded because if I was to do something like that, at least when they start going through the records, they know why it was done."

- "Just remember my name.  You might see it on TV tonight.  You just remember my name!"

- "No, believe me, I'll be at the New York State Department of Labor down on, on, on Schermerhorn or Livingston Street and I will make a big fucking deal out of it."

- "So I gotta go to the post office and shoot the post office, up.  Right?  That's what it, that's what it means, I gotta shoot the post office up?"

- "Somebody might get shot today coming out of Department of Labor."

Gov.'s MIL at 3–4.

4

In his motion, Defendant does not challenge the admissibility of these statements.  But he does seek to preclude the Government from introducing certain other statements he made on the phone call with the DOL, in which he referenced certain aspects of his own criminal history and his time spent incarcerated.  Specifically, Defendant seeks to preclude the following statements: (1) "I got 18, two and a half years in jail.  I got 18 and a half years.  No, listen, listen, I have eight"; (2) "to make myself not stop from robbing a bank they're 18 and a half years in jail"; (3) "Look, look, I got mad felons.  I got like nine, 10 felonies, right?"; (4) "Because listen didn't I just tell you I got 18 and a half years in jail.  It don't bother me to be in jail"; and (5) "And I told you I got 18 and nine years all together in jail, all together in prison.  Not Rikers Island, state prison, state prison, Clinton, Attica, Elmira, state prison.  Maybe where your, where, where, where, where your place is in Albany."  Def.'s MIL at 3-4.[1]

In its motion, the Government makes several applications regarding the parties' anticipated trial evidence.  First, it seeks to admit evidence of Defendant's previous criminal history and convictions in its direct case.  Gov.'s MIL at 8–12.[2]

---

[1] Page references to Defendant's Motion *in Limine* refer to the pagination in the ECF header, as the document is not independently paginated.

[2] Specifically, the government seeks to introduce (i) a 1994 conviction for attempted rape in the first degree, committed at the age of 17 and for which he was sentenced to 18 to 54 months' imprisonment (but which the Government proposes be described to the jurors as an unspecified "attempted violent assault"), (ii) a 1998 conviction for attempted burglary in the third degree, for which he was sentenced to 18 months' to three years' imprisonment, (iii) a 2004 conviction for attempted criminal possession of a loaded firearm in the third degree, for which he was sentenced to three years' imprisonment, (iv) a 2004 charge for resisting arrest, and

Second, the Government seeks to preclude the defense from introducing evidence or argument about (i) whether Defendant intended to carry out the threats at issue in this trial, and (ii) whether Defendant is a peaceful person or has non-violent tendencies.  Gov.'s MIL at 12–15.  Third, the Government seeks to preclude the defense from presenting evidence or argument about any purported First Amendment right to make threats.  Gov.'s MIL at 15–16.  Fourth, the Government seeks to preclude the defense from arguing that Defendant was selectively prosecuted.  Gov.'s MIL at 17.  Fifth, the Government seeks to preclude the defense from presenting evidence and argument concerning Defendant's possible punishment.  Gov.'s MIL at 18.  Sixth, the Government seeks to admit certain of Defendant's purported statements to law enforcement following his arrest that it argues evidence "consciousness of guilt," but preclude Defendant from introducing his own out of court statements during that same post-arrest interview, Gov.'s MIL at 18–19; for his part, Defendant argues that if the Court grants the Government's application, the Court should grant his cross-motion to introduce certain other statements made by him in those same interviews, which he contends are exculpatory, under the "rule of completeness."  Def.'s Opp'n to Gov.'s MIL, ECF No. 31 at 3; *see* Fed. R. Evid. 106.  Seventh, the Government seeks leave to impeach Defendant with certain prior criminal convictions if he testifies at trial, each of

_____

(v) evidence that he resisted arrest on at least one other occasion, violated his parole, and failed to register as a sex offender.  *See* Gov.'s MIL at 8–9.

6

which are more than ten years old, pursuant to Federal Rule of Evidence 609(b).

Gov.'s MIL at 20–23.

## DISCUSSION

18 U.S.C. § 115(a)(1)(B) provides that

> [w]hoever . . . threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished[.]

18 U.S.C. § 115 (a)(1)(B).  "Although the statute criminalizes certain speech, the Supreme Court has held that the First Amendment does not afford protection to speech that constitutes a 'true threat.'" *United States v. Santos*, 801 F. App'x 814, 816 (2d Cir. 2020) (summary order) (quoting *Watts v. United States*, 394 U.S. 705, 708 (1969)).

Until recently, the Second Circuit's test for whether conduct "amounts to a true threat" was "an objective one—namely, whether an ordinary, reasonable recipient who is familiar with the context of the [communication] would interpret it as a threat of injury." *United States v. Turner*, 720 F.3d 411, 420 (2d Cir. 2013) (alteration in original) (quoting *United States v. Davila*, 461 F.3d 298, 305 (2d Cir. 2006)).  However, while the motions *in limine* in the instant case were pending, the Supreme Court decided *Counterman v. Colorado*, in which the Court concluded that First Amendment requires the Government to prove that a defendant had "some

subjective understanding of the threatening nature of his statements" in order to convict the person in a "true threats" case.  No. 22-138, 2023 WL 4187751, at *2 (U.S. June 27, 2023).  Specifically, *Counterman* instructed that in order to convict someone of making a true threat, the Government must prove that a defendant "consciously disregarded a substantial risk that his communications would be viewed as threatening violence."  *Id.*  Accordingly, given this recent authority from the Supreme Court regarding the necessary *mens rea* in "true threat" cases and corresponding instructions to the jury, and without objection from the parties, this Court considers the parties' motions *in limine* with the presumption that the jury will be instructed pursuant to the *Counterman* standard.  *See Murray v. AET Inc. Ltd.*, 21-cv-3360 (TMR), 2022 WL 3701403, at *11 (S.D.N.Y. Aug. 26, 2022) (citing, *inter alia*, *Ithaca Coll. v. N.L.R.B.*, 623 F.2d 224, 228 (2d Cir. 1980)) ("[D]istrict courts and other inferior courts are bound by decisions of the Court of Appeals in the appropriate circuit unless overruled by an intervening Supreme Court decision or other change in law.").

The text of § 115(a)(1)(B) also contains a separate *mens rea* element: the defendant must have made the threat "with [the] intent to impede, intimidate, or interfere with [the federal official] while engaged in the performance of official duties, or with intent to retaliate against [the official] on account of the performance of official duties."  18 U.S.C. § 115(a)(1)(B).

18 U.S.C. § 875(c) makes it a crime to "transmit[] in interstate or foreign commerce any communication containing any . . . threat to injure the person of

another."  This statute also only criminalizes "true threats," as defined *supra*, as opposed to, for example, "hyperbole."  *See United States v. Francis*, 164 F.3d 120, 123 (2d Cir. 1999).  In *Elonis v. United States*, the Supreme Court concluded, as a matter of statutory interpretation, that the statute also required some showing of intent to make a threat.  575 U.S. 723, 740 (2015) (requiring that "the defendant transmit [the] communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat"); *see United States v. Segui*, No. 19-CR-188 (KAM), 2019 WL 8587291, at *5 (E.D.N.Y. Dec. 2, 2019)

### 1.    Defendant's Recorded Statements About his Criminal History

Defendant's motion to preclude the Government from playing the portions of the recorded phone call in which he references his own criminal history is GRANTED.  At various moments in the recorded phone call, Defendant makes reference to his own criminal history, stating at one point that he has "nine, 10 felonies," and at other points that he has spent "18 and a half years" in jail or prison.  Def.'s MIL at 3–4.  The Court concludes that the risk of unfair prejudice, confusing the issues, and misleading the jury substantially outweighs the probative value of these statements.  *See* Fed. R. Evid. 403.

As an initial matter, Defendant argues that these statements are not relevant evidence under Rule 401 of the Federal Rules of Evidence.  He argues that these statements were not, as the Government asserts, themselves threatening speech or intended as such, but instead were "poorly phrased attempts by [Defendant] to characterize the absurdity of his predicament; one where it is

preferable, from an economic standpoint, to be incarcerated than to live as a free man."  Def.'s MIL at 7.  However, the Court disagrees.

Evidence is relevant if it has "any tendency" to make a fact of consequence "more or less probable than it would be without the evidence."  Fed. R. Evid. 401. The statements that Defendant seeks to preclude surpass this "low threshold," *United States v. Gramins*, 939 F.3d 429, 450 (2d Cir. 2019); *United States v. Ray*, 585 F. Supp. 3d 445, 459 (S.D.N.Y. 2022) ("Rule 401 imposes a relatively low bar of relevance." (internal quotation marks and citation omitted)), particularly as to the *mens rea* elements in both statutes.  Defendant's own statements emphasizing his prior contact with the criminal system and history of incarceration is evidence upon which a jury could rely as it evaluates whether Defendant had the *mens rea* required for his statements to constitute a "true threat" under both statutes. Specifically, a jury could conclude that these statements tend to make it more likely that Defendant made his statements on the phone call with a "conscious[] disregard [for a] substantial risk that his communications would be viewed as threatening violence," *Counterman*, 2023 WL 4187751, at *2, or with the intent to impede, intimidate, interfere with or retaliate against public officials, 18 U.S.C. § 115(a)(1)(B), or for the purpose of making a threat, *see Elonis*, 575 U.S. at 740 (analyzing § 875(c)).

Defendant's proffered interpretation of these statements—that he cited his prior incarceration to underscore the desperation of his current plight of being out of custody but unable to support himself financially, *see* Def.'s MIL at 7—is one that

10

the jury could alternatively adopt. But it need not do so. If the jury accepted the inference the Government seeks to draw from these statements (that they demonstrate Defendant's efforts to ensure that those on the receiving end of his statements "would take them seriously, and would view them as true threats rather than mere hyperbole," Gov.'s Opp'n to Def.'s MIL, ECF No. 30, at 5), then Defendant's references to his criminal history would tend to support a finding that Defendant made these statements with the mental state necessary to satisfy the elements of the charged crimes.

However, the Court concludes that the statements should nonetheless be excluded under Rule 403 of the Federal Rules of Evidence. Although these statements have some probative value, it is limited—particularly relative to the other statements Defendant made on the recorded call. And the potential risk of unfair prejudice, confusing the issues, and misleading the jury substantially outweighs the statements' probative value.

In conducting a balancing analysis under Rule 403, it is appropriate for the Court to consider whether an alternative piece of evidence may carry "substantially the same or greater probative value but a lower danger of unfair prejudice." *Old Chief v. United States*, 519 U.S. 172, 182–83 (1997); *see also United States v. Al-Moayad*, 545 F.3d 139, 160–61 (2d Cir. 2008) ("The Supreme Court has stated . . . that 'what counts as the Rule 403 "probative value" of an item of evidence . . . may be calculated by comparing evidentiary alternatives.'" (quoting *Old Chief*, 519 U.S. at 184) (second alteration in original)); 2 Weinstein's Federal Evidence § 403.02

11

(2023) ("In conducting this Rule 403 balancing of probative value and prejudice, the trial judge must reject any method that treats any item of evidence as an island. Rather, the court, as part of its analysis, must evaluate all the pieces of evidence going to the same point. This assessment of probative value is distinct from the assessment of relevance under Rule 401 because it involves a comparison of evidentiary alternatives." (internal quotation marks omitted)).

While the handful of statements Defendant made that referenced his own criminal history may be probative of his state of mind, other statements in the forty-five minute long call whose admission Defendant does not challenge are far more probative of the elements of the charged crimes, including but not limited to Defendant's *mens rea*. For example, in the same call, Defendant stated, *inter alia*, "So I gotta go to the post office and shoot the post office, up. Right? That's what it, that's what it means, I gotta shoot the post office up?"; "Somebody might get shot today coming out of Department of Labor"; "Do the city want me to kill five or six different people?"; and "And I'm putting it out there on, cause I know this is recorded because if I was to do something like that, at least when they start going through the records, they know why it was done." Gov.'s MIL at 4.[3] For this

_____

[3] Indeed, the nature of these statements, among other factors, renders this case distinguishable from the out-of-circuit authority the Government cites in its opposition. *See* Gov.'s Opp'n to Def.'s MIL, ECF No. 30, at 6–7. In *United States v. Fulmer*, the defendant had threatened an FBI agent with whom he had been working to expose criminal activity in the defendant's family. 108 F.3d 1486, 1489 (1st Cir. 1997). There, the Court had admitted evidence regarding the defendant's "family relationship," including that he "had been restrained from seeing his family" by a court, to provide "general factual context." *Id.* at 1502. The defendant's relationship with the FBI agent itself "related directly to" the defendant's

reason, the Court disagrees with the Government's characterization of Defendant's statements referencing his criminal history as the "core of the defendant's offense conduct."  Government's Letter dated 7/9/2023, ECF No. 40 at 1.  The Court agrees with the Government, as explained *supra*, that Defendant's references to his criminal history and prior incarceration could be seen by the jury as additional evidence regarding his intent to threaten the persons with whom he spoke.  But these references, made at various points over the course of a forty-five-minute phone call, are far from the "core" of the alleged threats Defendant made.

By contrast, these explicit statements about "shoot[ing] the post office up," that "somebody might get shot today coming out of the Department of Labor," *inter alia*, are much more probative than Defendant's statements regarding his criminal history of whether Defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence, *Counterman*, 2023 WL

---

"relationship with his family," and indeed the defendant's interaction with the FBI agent "arose from that relationship."  *Id.*  Here, by contrast, the relationship of the parties on the telephone call did not "ar[i]se from" the evidence the Government seeks to admit.

Similarly, in *United States v. Springer*, the Court emphasized that the "outlandish threat[] to murder [a] district court judge by strapping a bomb to a drone and crashing it into her chambers," only "plausibl[y]" became a true threat when "viewed alongside the evidence of [the defendant's] sympathies toward ISIS." 753 F. App'x 821, 828 (11th Cir. 2018).  Here, far from being "outlandish," the gun violence that Defendant allegedly threatened to commit is unfortunately an all-too-common occurrence.  And in *United States v. D'Amario*, the court had "determined that the jury could make sense of [the defendant's threatening communication] *only* if it understood [his] criminal record." since the defendant threatened a judge because "he strongly wanted to *remain* in prison and *avoid* a term of supervised release." 330 F. App'x 409, 415 (3d Cir. 2009) (emphasis added).  There is no such risk here.

13

4187751, at *2, or satisfied the separate intent elements for §§ 115(a)(1)(B) and 875(c). All of the above statements (and more) will be available to the Government at trial notwithstanding this Court's ruling on those limited portions of the call that reference the Defendant's prior criminal history. And from that unchallenged evidence, the Government has ample facts from which it may strongly argue to the jury that the Defendant wanted his alleged threat to be taken "seriously." Gov.'s Opp'n to Def.'s MIL at 5.

On the other hand, allowing the jury to hear the additional statements Defendant made regarding his unspecified prior "felonies" and time in prison carries a high risk of "unfair prejudice, confusing the issues, [and] misleading the jury." *See* Fed. R. Evid. 403. In the first place, "[r]eference to a defendant's criminal record is always highly prejudicial." *United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971). Here in particular, these statements are even more likely to be unfairly prejudicial, and risk confusing and misleading the jury, because all parties agree that the statements Defendant made do not, in fact, accurately reflect his criminal history. Defendant stated on the call that he "got 18 and a half years in jail," Def.'s MIL at 4, but—although the sentences imposed on Defendant over the course of his previous convictions in total equated to a maximum term of approximately 18 years—he only served 7 years of those sentences in total. Def.'s MIL at 5–6 & n.3. Defendant stated at one point that he had "nine or ten felonies," but in reality, he faced nine felony charges over the course of his criminal history yet was ultimately convicted of three felonies as a result of three separate criminal proceedings. *Id.* at

14

6 & n.4.  And Defendant's statement referencing various state prisons is inaccurate to the extent his words may be interpreted as asserting he had been incarcerated at all of the named facilities, when in fact he was incarcerated only at Ulster Correctional Facility.  *Id.* at 6.[4]

The Court sees no way to structure the admission of this evidence such that its probative value is not substantially outweighed by its prejudicial effect.  On the one hand, to allow these statements to be admitted uncorrected would leave the jury with the false impression that Defendant's recitation of his criminal history and time incarcerated was accurate—and leave the jury to speculate as to the nature of Defendant's prior convictions.  On the other hand, if the Court clarified to the jury that Defendant's statements are "incorrect" or "inaccurate" but said no more, it would leave the jury to speculate about the time he actually spent in prison, where he was incarcerated, and the number of felonies of which he actually was convicted.  Similarly, if given no context about Defendant's criminal history, the jury would be left to speculate about (1) the *nature* of the prior convictions, perhaps imagining that they were more serious than they were, or even that they were substantively similar to the offenses charged, as well as (2) the *age* of Defendant's prior

---

[4] A jury might conclude, as the Government urges, that the fact that Defendant misstated his criminal history, including the number of felonies of which he was convicted and years spent in prison, as well as naming multiple state prison facilities, is even more probative that he made his statements with the requisite *mens rea*, *i.e.,* they were made to ensure that the DOL employee would take his threats seriously.  Gov.'s Opp'n to Def.'s MIL, ECF No. 30 at 5 & n.2.  Even so, the Court views this as a marginal increase in the limited probative value of the statements, and one that is still significantly less probative than the other, unchallenged statements on the recording.

convictions—for example, although Defendant's most recent conviction is nearly twenty years old, and his oldest is nearly three decades old, the jury may speculate that his convictions are much more recent.

However, to correct the record and tell the jury Defendant's *actual* criminal history—in the Government's case in chief, and regardless of whether Defendant chooses to testify in his own defense—would, in the Court's view, carry a high risk of unfairly prejudicing the jury against Defendant based on his decades-old criminal record.[5]  Unfair prejudice as to a criminal defendant can refer to the "capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180; *see also United States v. Zhong*, 26 F.4th 536, 553 (2d Cir. 2022) (same).  Here, were the jurors to be struggling with any elements of the charged crimes, they might be lured into drawing impermissible propensity conclusions from Defendant's previous convictions, particularly those for attempted rape (even if described in the terms that the Government alternatively proposes—as an attempted "violent assault," Gov.'s MIL at 9) and criminal possession of a loaded firearm.  For example, jurors may conclude that, because Defendant was previously convicted of offenses involving "violen[ce]," as the Government would present his 1993 attempted rape conviction, *see* Gov.'s MIL at 9, and possession of a loaded weapon, he is more likely

---

[5] And even if the (inaccurate) statements Defendant made on the recorded call were "inextricably intertwined" to his other allegedly threatening statements and as such admissible notwithstanding Rule 404(b), *see United States v. Towne*, 870 F.2d 880, 886 (1989), the same cannot be said for his *actual* criminal history, which was not conveyed on the phone call.

to have made "true threats" with the requisite intent. Jurors thus may fail to independently evaluate whether the government has met its burden to prove the elements of each offense charged beyond a reasonable doubt.

The Government, following the Court's initial ruling on the admissibility of these statements, moved to reconsider the ruling and have the Court admit these statements with a newly proposed limiting instruction: that Defendant's recitation of his criminal history was "inaccurate and *should not be relied upon in any way for its veracity*." Government's Letter, ECF No. 40 at 1 (emphasis added). But for similar reasons to those stated *supra*, admitting highly prejudicial evidence that the Court then proceeds to tell the jurors is "inaccurate" and "should not be relied upon" for its accuracy or truth would no doubt raise more questions than it answers. Doing so poses a great risk of further confusing the issues and misleading the jury as to the actual nature of Defendant's criminal history, and drawing undue attention to that history, which the Second Circuit has long underscored is "highly prejudicial" in any criminal case. *Puco*, 453 F.2d at 542.

Accordingly, even assuming that the statements Defendant made regarding his criminal history are not themselves more "inflammatory than the charged crime" in the instant case, *see United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999), there is a substantial risk that the statements could lead the jury to speculate that the underlying convictions *were* more inflammatory than the charged crime, and require introducing the entirety of his actual criminal history in order to correct any misimpression. Such a detour risks not only causing unfair prejudice to

17

Defendant, but also confusing the issues to be tried in this case and misleading the jurors. Therefore, after giving due consideration to the Government's "need for evidentiary richness and narrative integrity in [its] case," *Old Chief*, 519 U.S. at 183, these statements ultimately do not pass muster under the balancing test of Rule 403.

There will no doubt be other "true threat" cases following *Counterman* in which the Rule 403 balance is resolved differently. The Government may well succeed in admitting statements referencing prior crimes, for example, in cases where it does not also have the benefit of numerous statements evidencing the alleged threats that are separate and apart from references to a defendant's prior criminal convictions; where the allegedly threatening statements are far less explicit or readily comprehended by a jury than those made here, thus requiring the statements to be contextualized by the defendant's criminal history; or in which a Defendant's references to his prior record are truly "inextricable" from the Government's other proof. But that is not this case. Defendant's motion to preclude the introduction of the statements set forth at Def.'s MIL at 3–4 is therefore GRANTED.

### 2.    Defendant's Prior Criminal History as Direct Evidence

The Government also seeks to introduce evidence of Defendant's past criminal convictions, and additional alleged criminal conduct, in its direct case. The Government seeks to introduce this evidence through two witnesses: law enforcement officers who investigated Defendant after the phone call to the DOL,

and a USPS employee who had previously been Defendant's supervisor and had terminated him from his position at the USPS.  Gov.'s MIL at 8, 10–11.  In both instances, the Government states that it expects these witnesses to testify as to their response to Defendant's alleged threats.  However, in each case, the witnesses had learned of Defendant's prior convictions over the course of their own investigations, or through conversations with other law enforcement officers, but only after the phone call in which Defendant made the alleged threats.  The Government states that, with respect to Defendant's 1994 conviction for attempted rape, it seeks only to elicit "that the defendant was previously convicted of a violent assault to minimize the prejudice of the attempted rape conviction."  Gov.'s MIL at 9.

The Court concludes that this evidence should be excluded under Rule 403. Extrinsic evidence of the Defendant's arrest, prior convictions, and sentences imposed are even less probative of the elements of the charged crimes than the statements he made about his own criminal history on the call—and, indeed, are perhaps not probative at all.  While evidence that shows the effect of the alleged threats on a victim may be probative in a true threats case, *see United States v. Hunt*, 534 F. Supp. 3d 233, 249 (E.D.N.Y. 2021), the details of Defendant's criminal history, of which the subjects of his alleged threats were apparently unaware, do not qualify.  Although the USPS employee who terminated Defendant and the law enforcement officers who investigated him may have learned that Defendant had some sort of criminal history from the recording of the phone call, they only learned

of Defendant's actual prior convictions after the fact.  *See* Gov.'s MIL at 10 ("The government anticipates that the USPS employee will testify that she was informed of the threat by the USPIS, [and] that she learned of the defendant's criminal history on her own.")

Moreover, as discussed previously, the risk of unfair prejudice in admitting these criminal convictions is substantial.  They very well might lead the jury to draw impermissible conclusions that Defendant has the propensity to commit crime generally, and thereby cause jurors to assume that he committed the offenses charged in this action.

These witnesses may still testify as to certain other actions they took in response to the threats themselves, which may be probative of whether a reasonable recipient of these threats would consider them as actually threatening violence.  *See Hunt*, 534 F. Supp. 3d at 249.  Such evidence is likely to be much more probative of whether Defendant's statements constituted true threats than evidence about what these witnesses learned about Defendant's criminal history after the fact would be. *See Old Chief*, 519 U.S. at 184–85 (noting that the "discretionary judgment" of whether to exclude evidence under Rule 403 "may be informed . . . by placing the result of that assessment alongside similar assessments of evidentiary alternatives").

The district court cases cited by the Government, *United States v. Smothers*, No. 20-CR-213 (KAM), 2023 WL 348870, at *19 (E.D.N.Y. Jan. 20, 2023), and *United States v. Giovinco*, 382 F. Supp. 3d 299, 301 (S.D.N.Y. 2019), *aff'd sub nom.*

20

*United States v. Esposito*, No. 20-2143-CR, 2021 WL 5492935 (2d Cir. Nov. 23, 2021), do not counsel a different result here.  In those cases, district courts in this circuit admitted evidence of previous convictions in prosecutions involving large criminal organizations, where previous convictions were admissible as "direct proof of the existence of a criminal enterprise in which [defendant] participated." *Smothers*, 2023 WL 348870, at *19 (alteration in original) (internal quotation marks omitted); *see also Giovinco*, 382 F. Supp. 3d at 301 (holding prior conviction admissible "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime developed" (citation omitted)).  No such comparable facts exist here.

Accordingly, the Government's motion is DENIED and the Government will not be permitted to introduce evidence of Defendant's criminal history in its direct case.

### 3.     Evidence of Defendant's Intent to Carry out the Alleged Threats

The Government further seeks to preclude Defendant from introducing any evidence or making any arguments that he did not intend to carry out the alleged threats.  The Government argues that such evidence is irrelevant, since neither offense Defendant is charged with is limited to threats the speaker intends to carry out.  Gov.'s MIL at 13–14; *see Turner*, 720 F.3d at 429 ("The speaker need not even have intended or been able to carry out the threat for § 115(a)(1)(B) to apply.").  However, judges in this district have recognized that "evidence of intent to carry out

21

a threat may bear on whether the defendant intended the recipient to take the threat seriously." *Hunt*, 534 F. Supp. 3d at 251 (citing *United States v. Bayon*, 838 F. App'x 618, 620 (2d Cir. 2021)).  Accordingly, the absence of evidence of any intent to carry out a threat is probative of whether the defendant intended his statements to impede, intimidate, interfere with, or retaliate against the targeted public officials.  *Id.* at 252.

Defendant will be permitted to present argument that, if there is an absence of evidence that he intended to carry out the alleged threats, such an absence is probative of his state of mind.  *Id.* ("Because evidence of steps toward carrying out an alleged threat may be probative for this limited purpose, Defendant may argue the lack of such evidence suggests he did not intend to convey a real threat." (cleaned up)).  Conversely, the Government will be permitted to argue that, if evidence emerges that Defendant did intend to carry out his threat, such evidence is probative of Defendant's state of mind in making the allegedly threatening statements.

This motion is DENIED.  The Court will include a limiting instruction to the jury at close of trial, to the extent that either party makes such arguments, to clarify the limited relevance of this evidence and the elements of the crimes that the jury is required to find.  The parties may propose such an instruction prior to the charge conference, and the Court respectfully requests that they confer and attempt to reach agreement on an appropriate instruction prior to submitting it to the Court.

22

###### 4.      Evidence or Argument Relating to Punishment

The Government moves to preclude Defendant from offering evidence or argument as to the possible punishment or collateral consequences Defendant may face if convicted.  Defendant opposes this motion as overbroad, arguing that the Government goes too far in suggesting that Defendant cannot engage in "any discussion of the defendant's possible punishment or collateral consequences of conviction."  Def.'s Opp'n to Gov's MIL at 2 (quoting Gov's MIL at 18).

"It is well established that when a jury has no sentencing function," as in this case, "it should be admonished to reach its verdict without regard to what sentence might be imposed."  *Shannon v. United States*, 512 U.S. 573, 579 (1994) (internal quotation marks and citation omitted).  Similarly, the Second Circuit has observed that "[f]ederal courts usually instruct juries not to consider a verdict's consequences."  *United States v. Blume*, 967 F.2d 45, 49 (2d Cir. 1992).  This is so because the ultimate sentence imposed in this case, should Defendant be convicted, would be for the Court to decide and not the jury.

Defendant does not point to any specific argument or evidence he would seek to introduce or explain why these established principles should not apply there.  Accordingly, the Government's motion is GRANTED.  To the extent that, as trial proceeds, Defendant has specific arguments about collateral consequences or potential punishments he wishes to raise to the jury and any authority as to why such specific evidence or argument is admissible, Defendant may move for reconsideration of this decision.

### 5.   Post-Arrest Interview Statements Regarding Potential Plea and/or Sentence

The Government seeks to introduce two statements Defendant allegedly made following his arrest on October 13, 2022.  One statement was allegedly made to USPIS Investigator Simkovitz at approximately 10:30 AM, when Defendant was being processed at pre-trial services—but before his arraignment—in which he asked if he could "just plead guilty today."  Gov.'s Reply Brief Ex. A, ECF No. 34-1, at 1.  The second statement was allegedly made while Defendant was in the custody of the United States Marshal Service at 11:30 PM that same day, when he reportedly said, in an apparent reference to a possible term of incarceration arising from the present charges, "20 months is nothing, if I'm going to do . . . under two years I may as well just do it now."  *Id.*

The Government further seeks to preclude Defendant from offering any of his own out-of-court statements made during these post-arrest interactions with law enforcement.  Gov.'s MIL at 18–19.[6]  Although a party's own out-of-court statement may be offered against him, *see* Fed. R. Evid. 801(d)(2)(A), a party is generally precluded from offering their own out of court statements into evidence if the statement does not fall under another hearsay exception.  *United States v. Kadir*, 718 F.3d 115, 124 (2d Cir. 2013).  Defendant, however, argues that in light of the

---

[6] In this same motion, the Government initially also sought to preclude Defendant from playing certain portions of the recorded telephone conversation containing his statements, even though the Government planned to introduce the *entire call* into evidence and play some portions for the jury.  *See* Gov.'s MIL at 19.  But the Government clarified in its reply brief that it does not contest that, once the recording is admitted into evidence as a Government exhibit, Defendant may play any portion it chooses for the jury.  Gov.'s Reply, ECF No. 34 at 7 n.4.

Government's motion to admit the aforementioned statements, his earlier post-arrest statements—including certain statements that Defendant argues are exculpatory, *i.e.,* which support his claim that the phone call statements were not, in fact, true threats—should be introduced under Rule 106 of the Federal Rules of Evidence, also known as the rule of completeness, which provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part . . . that in fairness ought to be considered at the same time."

The Court need not reach Defendant's rule of completeness argument because it concludes that, under Rule 403, Defendant's pre- and post-arraignment statements the Government seeks to introduce are not admissible.

The Government conceded in a conference held on July 7, 2023, that the post-arrest statements it seeks to offer are not "admissions" of guilt; it argues, instead, that these statements are relevant because, in the Government's view, they show the Defendant's "consciousness of guilt." However, the risk of unfair prejudice, confusing the issues, and misleading the jury substantially outweighs any arguable probative value that these statements may have.

Even assuming that these statements satisfied the relevancy threshold under Rule 401, their probative value as to Defendant's consciousness of guilt is limited at best. These statements do not admit to any *actus reus* or *mens rea* that is an element of either of the charged crimes, but merely indicate a *potential* willingness to plead guilty and serve prison time to resolve a new criminal charge. The

25

Government has not identified any cases in which a similar statement was admitted as probative of consciousness of guilt; nor has the Court identified such cases in its own research.  In fact, in *United States v. Mejia*, the Second Circuit expressly declined to reach this precise issue, since the defendant there had not challenged the statement's relevancy on appeal; the Court observed, however, that the defendant's statement that he wanted to "cop out" to the crime he was accused of could have indicated he "wanted to 'cop out' using an *Alford* plea or a plea of nolo contendere, and for neither type of plea must the defendant admit guilt."  655 F.3d 126, 129 n.4 (2d Cir. 2011).

Indeed, courts have recognized that "[t]he decision to plead guilty may involve considerations other than the accused's consciousness of guilt for the crime charged." *Jideonwo v. I.N.S.*, 224 F.3d 692, 699 (7th Cir. 2000) (citing *North Carolina v. Alford*, 400 U.S. 25, 33 (1970) (holding that a guilty plea is not inconsistent with a claim of innocence because "reasons other than the fact that he is guilty may induce a defendant to so plead") (cleaned up)).  To interpret such statements as consciousness of guilt ignores the myriad reasons why a defendant in such a position, immediately following his arrest, might express a potential willingness to plead to one or more of the crimes charged.  At such an early juncture in the case, a defendant may not know (or, even if so informed at arraignment, truly understand) the elements of the crime(s) charged; does not yet know all the evidence against him; and has not meaningfully consulted with an attorney who can fully advise him, after due investigation and research, about the potential risks and

26

benefits of trial, including any potential defenses.[7]  And a defendant who has a prior history of incarceration—or has been detained for the first time following arrest—may experience fear for his safety, despair over the prospect of a lengthy incarceration, or be influenced by other factors that may make it seem advantageous to quickly begin (and thus more quickly end) any potential sentence. But that perspective may change once the accused has the benefit of counsel's meaningful advice and advocacy.  Thus, the probative value of Defendant's statements as asserted by the Government under its "consciousness of guilt" theory of admissibility is, at best, minimal.

Conversely, the risk of unfair prejudice, confusing the issues, and misleading the jury is high.  In this analysis, the Supreme Court has emphasized that unfair prejudice as to a criminal defendant can refer to the "capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  *Old Chief*, 519 U.S. at 180; *see also Zhong*, 26 F.4th at 553 (same).  As discussed *supra*, this is exactly what might result if this evidence is introduced here.  For example, while deliberating over each element of the crimes charged and the *mens rea* requirement, the jury might

---

[7] Defendant's statement regarding the possible term of incarceration he may face is even less probative of consciousness of guilt.  It only speaks to Defendant's belief (though on what basis is unclear) as to the time in prison he might be facing if convicted.  It might be reasonable to infer from this statement that he was considering a prompt guilty plea as a way to expedite the start (and completion) of a possible sentence.  But that is even one step further removed from the consciousness of guilt inference that the Government would ask the jury to draw here.

interpret these statements as an admission of guilt and fail to independently evaluate whether the Government has met its burden to prove the elements of each offense beyond a reasonable doubt.

Additionally, Defendant's statement that "20 months is nothing, if I'm going to do . . . under two years I may as well just do it now" carries an even higher risk of misleading the jury. Such a statement invites jurors to speculate on an issue that the Government has successfully moved the Court to preclude Defendant from invoking at trial: the potential sentence Defendant may receive if convicted. Jurors, after hearing this statement, may believe that, if they find Defendant guilty, he will serve 20 months or "under two years" in prison. Such a belief may impact their deliberations, with jurors thinking that if they find Defendant guilty, this might be the sentence he definitely *would* receive, or the maximum sentence he *could* receive. Neither, of course, is true, since the Court would be required to sentence Defendant, if he were convicted, pursuant to the factors set forth in 18 U.S.C. § 3553(a), after consideration of the appropriate Sentencing Guidelines range—none of which is before the Court, or the jury, at this time.

Accordingly, because the probative value of these statements is dubious at best, and they carry a high risk of unfair prejudice, confusing the issues, and misleading the jury, the Court will exclude these statements, and to the extent the Government's motion seeks to admit these statements, it is DENIED. Accordingly, because these statements will not be admitted, the Court does not address Defendant's argument that the rule of completeness requires that other post-arrest

statements be introduced, and Defendant has not cited any other rule or theory that would render these statements admissible.

### 6.   Defendant's Prior Convictions as Impeachment Evidence

The Government further moves to introduce evidence of Defendant's prior convictions for purposes of impeachment should Defendant testify at trial. Specifically, the Government seeks to cross-examine Defendant regarding three of his prior convictions: Defendant's nearly-three-decade old 1994 conviction for attempted rape in the first degree, his 1998 conviction for attempted burglary in the third degree, and his 2004 conviction for attempted criminal possession of a loaded firearm in the third degree. The introduction of prior convictions as impeachment evidence is governed by Rule 609(b) of the Federal Rules of Evidence,[8] which states that evidence of a conviction older than ten years is admissible for impeachment purposes only if "its probative value . . . substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1).

As stated *supra*, the introduction of Defendant's past convictions is highly prejudicial. Introducing Defendant's past convictions risks that the jurors will draw improper conclusions regarding Defendant's propensity for criminality. Jurors may conclude that Defendant has a greater propensity to commit crime (and to threaten to commit crime) after hearing about his previous criminal convictions, and make those jurors less likely to impartially and objectively evaluate the evidence in the instant case. At the very least, such evidence could "lure the factfinder into

---

[8] The Government concedes that all of Defendant's past convictions are more than 10 years old within the meaning of Rule 609(b). *See* Gov.'s MIL at 20–22.

declaring guilt on a ground different from proof specific to the offense charged." *Zhong*, 26 F.4th at 553 (in the context of admission of uncharged offenses) (citation omitted).

By contrast, the probative value of these past convictions is minimal. In weighing the probative value of these past convictions as to D's character for truthfulness, the Court must consider "(1) The nature of the crime; (2) The time of conviction; (3) The similarity between the past crime and the charged crime; (4) The importance of defendant's testimony; [and] (5) The centrality of the credibility issue." *United States v. Hawley*, 554 F.2d 50, 53 n.5 (2d Cir. 1977) (citation omitted). In conducting this analysis, the Court is mindful of the Second Circuit's instruction that "convictions over ten years old be admitted very rarely *and only in exceptional circumstances*." *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993) (internal quotation marks and citation omitted) (emphasis added).

The first *Hawley* factor weighs largely against the admission of this evidence for purposes of impeachment. It is arguable that a burglary conviction constitutes a "crime[] involving stealth," which the Second Circuit has instructed that, although "not quite [a] crime[] of 'dishonesty or false statement' do[es] reflect lack of credibility." *United States v. Estrada*, 430 F.3d 606, 618, 620 (2d Cir. 2005). But none of Defendant's past convictions speak directly to his character for truthfulness, and his other convictions do not speak to a lack of credibility, even indirectly.

The age of these convictions further significantly counsels against their admission. Defendant's most recent conviction is from 2004, nearly 20 years ago. His other two convictions from 1998 and 1994 are twenty-five and nearly thirty years old, respectively. Furthermore, the defense has asserted, and the Government has not disputed, that until the instant arrest, Defendant maintained a clean record for the past fifteen years—ever since he was released from custody on his most recent conviction. Def.'s MIL at 6; *see Daniels v. Loizzo*, 986 F. Supp. 245, 252 (S.D.N.Y. 1997) (noting that it is proper for courts to consider, when assessing probative value under Rule 609(b), whether the witness "has mended his ways or engaged in similar conduct recently"). In addition, Defendant's first conviction—from 1994, for attempted rape—involved actions from when he was seventeen years old. The second *Hawley* factor, therefore, weighs against the admission of this evidence for purposes of impeachment.

It is true that Defendant's previous convictions are dissimilar to the offenses with which he is currently charged, insofar as none of the previous convictions were for making threats or engaging in similar conduct. For this reason, the third *Hawley* factor, therefore, weighs slightly in favor of the admission of this evidence for purposes of impeachment. However, the Government goes too far when it asserts that there is "*no concern* that the jury would find the defendant guilty of the threat offenses merely because he committed other crimes in the past." Gov.'s MIL at 22 (emphasis added). This grossly understates the risk that jurors may reach an improper propensity conclusion—being "more likely to view [Defendant] as having a

propensity to commit crime . . . than having a propensity to be dishonest." *United States v. Bracy*, 20-CR-483 (ARR), 2022 WL 17801133, at *6 (E.D.N.Y. Dec. 19, 2022) (citation omitted). Particularly here, where Defendant is charged with crimes that involve threats of violence, prior convictions for an attempted violent assault or for a firearm offense are more likely to lead the jury to improper propensity conclusions than they are to bear on the accused's credibility.

It may be too early to tell how the fourth and fifth factors in the analysis of this evidence's probative value will apply, but at this stage they appear to limit the probative value of this evidence. Defendant has not yet indicated whether he will testify in this case. The importance of Defendant's testimony and the centrality of his credibility is also unclear at this juncture. The Court observes, however, based on the representations of the parties, that it does not appear that this is a case where, for example, it is entirely a defendant's word against the Government's witnesses' about what actions the defendant took or did not take. Indeed, in this action, there is a recorded phone call of Defendant's statements that the Government will seek to introduce in this case, and notably, Defendant has made clear that he does not intend to dispute that he is the person who made these statements.[9] The fourth and fifth *Hawley* factors, therefore, appear to weigh against the admission of this evidence for purposes of impeachment.

---

[9] Indeed, Defendant requested (and the Court agreed) to ask a question of prospective jurors at voir dire, conducted on July 10 and July 11, 2023, which referenced certain of the statements Defendant made on the recorded phone call, and during which the Court told the jurors "[t]here will be no dispute that the

Accordingly, the Court finds that the probative value of these convictions does not substantially outweigh the significant risk of unfair prejudice to Defendant, Fed. R. Evid. 609(b)(1), and that this is not the "rare[]" or "exceptional circumstance[]" under which such evidence should be admitted. *Zinman*, 983 F.2d at 434. The Government's motion is therefore DENIED.[10]

### 7.  Remaining Motions

The Government further argues that Defendant should be precluded from (1) arguing or presenting evidence regarding any purported right to make threats under the First Amendment, and (2) making any arguments regarding selective prosecution or selective motivation for investigating the defendant. Defendant has indicated he does not intend to introduce such evidence or make such arguments. Accordingly, the Government's motions are GRANTED as unopposed.

---

defendant made those statements." *See* Defendant's Voir Dire Requests, ECF No. 33 at 3.

[10] As a general matter, however, should Defendant open the door by testifying for example, to a lack of criminal history, to a general character for peacefulness or to a lack of violent tendencies, the Government will be permitted to seek to offer evidence of his criminal history to rebut those statements. This is not to say that Defendant cannot testify that he did not intend to threaten anyone, or that he had no intent to carry out any alleged threats in the phone call at issue in this case. However, should Defendant make affirmative statements about his criminal history or general character that may make his prior criminal record fair ground for impeachment, the Government may impeach him with evidence of his criminal record, as appropriate. To the extent this issue arises, the Court will hear from the parties outside the presence of the jury and consider allowing appropriate cross-examination at that time.

## CONCLUSION

For the foregoing reasons, Defendant's motion *in limine* is granted and the Government's motions *in limine* are granted in part and denied in part.

SO ORDERED.

/s/ *Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated:   July 12, 2023
         Brooklyn, New York

34